Hoen *v*. Simmons.

---

## HOEN *vs*. SIMMONS *et al*.

In an action for the recovery of land, if the plaintiff proves no title, the defendants being in possession cannot be ousted; but if the defendants have entered into possession, claiming under the plaintiff, and in subordination to his title, they are estopped from questioning it.

A specific performance of a contract for the conveyance of land, can be enforced only when the contract is in writing, or where there has been part performance of a verbal contract by the vendee.

Where the terms of a verbal contract are reduced to writing, but the written paper is neither signed nor delivered, the contract will be deemed inchoate and incomplete, and neither party will be bound by it.

A party who seeks a specific performance of a verbal contract for the conveyance of real estate, should show that he has fully complied with the *substance* of the contract on his part.

Thus, where A. contracted verbally to convey to B. a certain lot of land for $5000, of which sum $1000 was to be paid down, and the balance in two months, with interest at the rate of two per cent. a month, and the time for the payment of the $4000 had elapsed long before the commencement of the suit; *Held*, the plaintiff not having paid or tendered the $4000, with interest, that a specific performance ought not to be decreed.

An agreement for the conveyance of land, resting solely in parol, is void by the Mexican law.

APPEAL from the court of First Instance of the district of San Francisco.   The action was brought to recover possession of a lot of land in the city of San Francisco.   The plaintiff had made a verbal contract with the defendants to sell to them the premises in controversy for the sum of $5000, of which $1000 was to be paid down, and the balance in two months, with interest at the rate of two per cent. a month.   It was understood by the

parties that the contract was to be reduced to writing, and signed by them; papers were accordingly drawn up by the defendants' attorney, but before they were signed the plaintiff left the state for Oregon, and they never were signed. After the plaintiff had departed for Oregon, the defendants in good faith, and relying on the execution of the contract by the plaintiff, took possession of the lot, and erected a building thereon. They took possession, however, *without the direction, consent, or knowledge of the plaintiff*. The latter, on his return to San Francisco, refused to perform his contract, and instituted this suit to recover possession. The defendants, thereupon, filed a cross bill to compel a specific performance. Before filing their bill, they tendered to the plaintiff the sum of $1000, with interest thereon from the time of entering into the verbal contract, but they did not pay, or offer to pay the balance of $4000, although the time had elapsed within which, according to the terms of the verbal contract, they were to pay it. The court of First Instance ordered a specific performance, and entered judgment to that effect, from which the plaintiff appeals.

*George Hyde*, for plaintiff.

*Frederick Billings*, for defendants.

*By the Court*, BENNETT, J. Action by plaintiff to recover possession, and cross suit by defendants for specific performance.

It is clear that the plaintiff is entitled to recover possession of the lot in question, unless the defendants have a right to compel him to convey it to them. The counsel for the defendants made a point, that, inasmuch as the plaintiff had proved no title in himself, the defendants, being in possession, could not be ousted. This is very good law when applied to a proper state of facts, but has no application in this case. The defendants, having entered into possession, claiming under the plaintiff and in subordination to his title, are estopped from questioning it. Their position is similar to that of a tenant, who cannot gainsay or

Hoen *v.* Simmons.

deny the title of his landlord, without having first restored the possession.    The plaintiff must, therefore, recover, unless the defendants show a right to a specific performance, upon the principles adopted by courts of equity.

The affirmative of this latter position can be sustained only upon the ground, that there was a subsisting contract in writing reciprocally binding upon the parties ; or that there was a verbal agreement, and part performance of it by the defendants under such circumstances, that it would be a fraud on the part of the plaintiff if he were not compelled to convey.

There was no contract in writing.    A paper was drawn up which might have acquired the force of a written contract, had it been signed and delivered ; but without signature or delivery, it is of no account.    It was inchoate and incomplete, and neither party was bound by it.

The contract, therefore, if there was one, was merely verbal, and there is no part performance within the equitable rules which govern decisions in such cases.

A party, asking the interposition of the equitable power of the court in enforcing a verbal contract for the conveyance of real estate, should show that he has, on his part, fully complied with the *substance* of all the provisions which he engaged to perform. The verbal contract in this case was, that the defendants should pay $1000 down, and $4000 in two months thereafter, with interest at the rate of two per cent. per month.    The period limited for the payment of the full amount had elapsed long before the commencement of the suit; and in order to entitle the defendants to a specific performance, they should have shown that they had paid or tendered the whole sum of $5000, with the stipulated rate of interest.    This they have not done.

But the defendants say that by the Mexican law a verbal contract for the sale of land was equally valid, as if it were in writing.    We think not, and so held in *Harris* v. *Brown*, (*ante*, p. 98.)    There is no doubt about the correctness of that decision. There never has been a time, since the adoption of the *Feero Juzgo*, in which lands could be conveyed under Spanish or Mexican law, without an instrument in writing,—unless it was,

perhaps, in the case of an executed contract, where corporeal possession was delivered at the very time of the sale by actual entry upon the premises, and the doing of certain acts analogous to the *livery of seisin* at common law. Had this not been so, one main branch of the revenues of the Spanish Crown and Mexican Republic, called the *Alcabala,* being a duty payable upon the transfer of land, would have been easily evaded.

By *Law* 29, *lib.* 8, *tit.* 13, of the *Recopilacion de Indias,* every sale of real estate was required to be made before the *escribano* of the place where the contract was entered into, and if there were no *escribano,* before the judge of First Instance; and these officers were required to furnish a copy and statement of the writings or contracts made before them, with the day, month, and year in which they were made, the names of the seller and purchaser, the property sold or exchanged, and the price. (*Arrillaga's Decretos,* vol. for 1838, p. 421.)

Another author says, that the conveyance of lands was required to be by a written instrument, properly authenticated, (*escrito autentico.*) Without this, neither possession nor property in lands could be sustained in law; no judicial designation of boundaries, or fixing of landmarks could take place; only with the title-deeds before the eye could these important and delicate acts be performed, whether the object were to avoid a litigation, or bring a pending suit to a termination, according to justice and truth. Such importance was attached to the formalities prescribed by law for the execution of deeds of conveyance, that if, by chance, an instrument were defective in form, as, for instance, if it lacked the signature of the judge, or *escribano,* or witnesses, or parties, or an exact statement of their acts, motives, and objects, the instrument would be vicious (*vicioso,*) and consequently null, (*nulo.*) (*Ordenanzas de Tierras y Aguas,* p. 144, 145.)

So important was this principle of law deemed, that, in the convention between the Mexican government and the English holders of Mexican bonds, entered into on the 15th day of September, 1837, by which the bonds were authorized to be exchanged for lands, it was thought proper to insert a stipulation,

that after title was acquired and possession taken, the lands should not thenceforth be transferred, except by means of a written instrument in due form of law. (*Por medio de escritura de venta en la forma legal.*) (*Sec. 5, of such convention,* p. 53, of *Ordenanzas de Tierras y Aguas.*)

We do not doubt that a writing was as necessary for the transfer of lands in Mexico, as it is in the United States.

Judgment reversed, with costs.